THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* EDWARD CASSONE AND FRANCIS CARBONARO, Respondents.

First Department, December 17, 1963.

*Alan Frederick Leibowitz* of counsel (*H. Richard Uviller* with him on the brief; *Frank S. Hogan, District Attorney*), for appellant.

*Philip Segal* of counsel ( *Samuel Segal,* attorney), for Edward Cassone, respondent.

*Gretchen W. Oberman* of counsel (*Anthony F. Marra,* attorney), for Francis Carbonaro, respondent.

*Per Curiam.* The People appeal from an order granting a motion to suppress. The appeal was perfected as to only two of the defendants in the proceeding, namely, Cassone and Carbonaro. As to the remaining defendants, the appeal is severed, and the application as to them is not considered at this time.

The motion to suppress was made in the course of the prosecution of an indictment for burglary in the third degree. The facts brought out on the motion which are, for the purposes of the application, undisputed, follow. Joseph Sullivan, a police officer, was assigned to foot patrol between Fulton and Beekman Streets on the night of December 31 and the morning of January 1, 1962. On this New Year's Eve, the area was practically deserted. Prior to the incidents to be related, from the com-

mencement of the officer's tour of duty at 11:00 P.M., no pedestrians and only three cars, one a police patrol car, passed him. At about 12:15 A.M., he was standing at the corner of Nassau and Fulton Streets. A group of young people who had come out of the subway passed and greeted him appropriately. Ten minutes later, he looked north up Nassau Street and about two blocks away he saw a car parked along the west curb. A sign projecting from the building enabled him to fix the location as being in front of the Western Union store. The officer knew, from his familiarity with the neighborhood, that this store was not equipped with a burglar alarm. Several men appeared to be loading a heavy object into the trunk of the car. He started to walk towards them, but before he reached them the men got into the car and it started north. At this moment a car passed him and he hailed it. In the car were the young people who had accosted him some minutes earlier. He commandeered the car and directed the driver to follow the other car, still in sight. Snow was falling, the streets were slippery, and speed was inadvisable. It took some time to catch up with the other car and, in the course of the chase, the officer and the driver were able to identify the make of the car (Oldsmobile) they were pursuing, and note that it bore a New Jersey license plate. At Park Row and Pearl Street the first car was stopped by a traffic light. The identification of the car was so complete that no question was raised but that it was established that the car was the same one that was being pursued. The officer drew his revolver, got out and directed the four men to get out of their car. He questioned them and received answers that were patently false. A squad car arrived and the men, who are the defendants, were taken to the Fifth Precinct station house. It later developed that the Western Union store had been burglarized, and a safe from that store, together with burglar's tools, was found in the trunk of the car.

The court below found on these facts that the officer did not have sufficient grounds to make an arrest and that the search pursuant to it was unlawful. We disagree.

A peace officer may arrest without a warrant, in addition to in the situation where the crime is committed in his presence, "When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it" (Code Crim. Pro., § 177, subd. 3) or "When he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it, though it should afterward appear that no felony has been committed, or, if

committed, that the person arrested did not commit it '' (*id.*, subd. 4).

These two subdivisions are not identical and have application to differing situations, though a particular situation may be applicable to both. The distinction can be brought into sharper focus by considering section 183, dealing with the right of a private person to arrest for a crime not committed in his presence. The provision is: '' 2. When the person arrested has committed a felony, although not in his presence.'' To speak in terms of consequences, the validity of the arrest depends on the guilt of the defendant, and no other consideration, such as the reasonableness of the arresting person's belief, is of any significance (*McLoughlin* v. *New York Edison Co.*, 252 N. Y. 202, 205). When a peace officer is making the arrest, the situation changes. If he has reasonable grounds for believing both that a felony has been committed and that the person arrested committed it, his belief, resting on such grounds, validates the arrest just as if the person arrested had in fact committed the felony (§ 177, subd. 4). So in this situation the reasonableness of the officer's belief becomes very material. The situation under subdivision 3 is midway between that of a private person making an arrest and that of an officer with grounds for belief as to the commission and defendant's part in the commission. The fact of commission, plus reasonable grounds for belief as to defendant's participation, is sufficient. So that here the only belief that is subject to question as to its reasonableness is as to whether the person arrested committed the act (*People* v. *Lombardi*, 18 A D 2d 177, 180, affd. 13 N Y 2d 1014). It may be argued that it is impossible to entertain a reasonable belief that a particular person committed a felony without also entertaining a belief that a felony has been committed. And, as a matter of logic, this is unassailable. The distinction between the subdivisions depends, however, not on the logic to sustain the arrest but on the proof necessary to validate it. If no felony had in fact been committed, it is necessary to show that a reasonable ground for believing the contrary was presented to the officer. If a felony had in fact been committed, this element of proof is dispensed with.

The arrest being lawful under both subdivisions, the search pursuant to it was valid. In reaching this conclusion we have assumed that the arrest took place when the officer ordered the defendants out of their car. We do not reach any question of detention as distinct from arrest, nor the effect of information received between detention and arrest.

As to defendants Cassone and Carbonaro, the order to suppress should be reversed, on the law and the facts, and the motion to suppress denied.

BOTEIN, P. J., BRIETEL, McNALLY, STEUER and BASTOW, JJ., concur.

Order, entered on September 5, 1962, unanimously reversed, on the law and on the facts, and motion to suppress denied.