The UNITED STATES of America,
Appellee,

v.

William Walter ROSSE, Appellant.

No. 104, Docket 33531.

United States Court of Appeals
Second Circuit.

Argued Sept. 18, 1969.

Decided Nov. 6, 1969.

---

James P. Shanahan, Asst. U. S. Atty. (James M. Sullivan, U. S. Atty., for the Northern District of New York, on the brief), for appellee.

John L. McMahon, Saratoga Springs, N. Y., for appellant.

Before LUMBARD, Chief Judge, and WATERMAN and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

William Rosse, a postman, was found guilty by a jury of stealing $8 from the mails in violation of 18 U.S.C. § 1709 (1964). He was sentenced to a term of thirty days imprisonment on the first count of the two count indictment and two years imprisonment on the second count, with the later term suspended and probation of three years imposed. We affirm.

Rosse first renews his claim, originally advanced before Judge Foley at a pretrial motion to suppress, that the eight one-dollar bills taken from his possession by postal inspectors at the time of his arrest were illegally seized and so should not have been admitted as evidence at trial. For an understanding of defendant's argument, we must turn to state law.

Postal inspectors, as the government concedes, have not been given the power to arrest by federal law. See Alexander v. United States, 390 F.2d 101, 103–105 (5th Cir. 1968). But it is equally well settled that in the absence of federal authorization, the law of the state where the arrest occurs determines its validity. United States v. DiRe, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The government here contends that the postal inspectors made valid citizen's arrests, as authorized by N.Y.Code Crim. Proc. § 183 (1958). Further, it argues the search in which the dollar bills were found was incident to that arrest and, as based on probable cause to believe a felony had been committed, was valid under the settled law of search and seizure. We agree.

Section 183 authorizes a citizen to arrest when "the person arrested has committed a felony, although not in his presence." Concededly, violation of 18 U.S.C. § 1709 (1963) is a felony.[1] Defendant argues that since the validity of the arrest turns on whether the person apprehended ultimately is convicted of a felony, evidence seized incident to a citizen's arrest cannot be used to obtain the conviction, lest the arrest's validity is secured by a bootstrap operation.

We fail to see the logic of this argument. Although not specifically authorized by New York statute, searches incident to a citizen's arrest are justified by the same rationale underlying searches incident to any other lawful arrest. See United States v. Viale, 312 F.2d 595, 600 (2d Cir. 1963). Defendant argues, however, that probable cause has been specifically omitted from § 183 and cannot be introduced by judicial implication.[2] The principal significance of the

---

1. New York's definition of a felony governs here. The new definition of a felony in the recently enacted Penal Code includes federal crimes punishable by over one year's imprisonment. N.Y.Penal Law, McKinney's Consol.Laws, c. 40, § 10.00 (5) (1967). The maximum penalty for violation of 18 U.S.C. § 1709 (1964) is a $2,000 fine or five years' imprisonment or both.

2. Compare § 183 with § 177:
   A peace officer may, without a warrant, arrest a person,

   *　　　*　　　*　　　*　　　*

   3. When a felony has in fact been committed, and he has reasonable cause

omission, however, is in the area of civil actions for false arrest or false imprisonment, where admittedly reasonable cause to believe a felony has been committed has no place as a defense. See People v. Cassone, 20 A.D.2d 118, 245 N.Y.S.2d 843, aff'd, 14 N.Y.2d 798, 251 N.Y.S.2d 33, 200 N.E.2d 214, remittitur amended, 14 N.Y.2d 942, 252 N.Y.S.2d 335, 200 N.E.2d 873, cert. denied, 379 U.S. 892, 85 S.Ct. 167, 13 L.Ed.2d 95 (1963). For criminal purposes, it would seem that an arrest is valid if the man arrested is charged or rearrested for a felony when he is brought before a magistrate or a peace officer as required by § 185, and there was probable cause to make the arrest. Otherwise, the validity of the arrest, as defendant urges, would have to await the completion of the criminal trial, clearly a wholly impractical procedure.

The postal inspectors had probable cause to arrest Rosse. The post office at Saratoga Springs, New York, had within a short period of time received at least nineteen complaints of cash stolen from the mail. Postal inspectors sent six test letters—letters addressed to indicate they were likely to contain cash and containing marked bills—through the Saratoga Springs mail, and two were found missing. Certain that someone in the post office was a thief, they came to Saratoga Springs and, with the assistance of the local Superintendent, compared the fourteen days on which the nineteen letters had been stolen with employee time sheets; only Rosse was working on all these days. Armed with this information, the postal inspectors made up five more test letters, marked the bills they inserted, and noted the serial numbers. They dropped them in mail-boxes along Rosse's collection route and alerted the post office while he picked them up and brought them in. Once there, the letters were sorted, apparently by several employees working together, thereby making a theft unlikely. The foreman, who knew that an investigation of Rosse was under way, supervised the sorting and himself assisted in separating the local mail in which the test letters were included. In Rosse's first collection, one of the three letters was missing; the same procedure was followed on the second, and there one of two was missing. The foreman told the inspectors, and they arrested Rosse. They told him to empty his pockets; among the $84 seized in this disputed search were the eight marked and stolen bills.

■ The postal inspectors had more than adequate grounds on which to arrest Rosse. With information about the prior thefts directing their attention toward him, the disappearance of the test letters under controlled conditions gave them probable cause to believe he had committed the thefts.

■ Defendant also argues that the admission of testimony by the postal inspectors at trial about the nineteen previous thefts was reversible error. We find this argument to have considerable merit, for it is difficult to imagine any theory of evidence under which this testimony would be admissible. The prior investigations and attendant thefts may have a place at a probable cause hearing, not at a trial for a completely distinct substantive offense.[3] Evidence of such prior crimes is highly prejudicial as it created a suspicion about the defendant although there were many other

---

for believing the person to be arrested to have committed it;
4. When he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it, though it should afterwards appear that no felony has been committed, or, if committed, that the person arrested did not commit it;

N.Y.Code. Crim.Proc. § 177 (McKinney Supp. 1969–70).

3. In this case, the prior investigations were introduced at a preliminary hearing before Judge Foley on defendant's motion for suppression of the seized bills on the grounds that the inspectors lacked probable cause for the arrest.

employees in the Saratoga Springs post office who may have been responsible for the prior thefts. In short such evidence is not sufficiently connected with the defendant to justify its admission on the question of guilt, although it is relevant to explain the reason for the investigation and the method used by the postal inspectors to find who was guilty.

We feel, however, that defendant's counsel did not make timely or proper objection to this testimony, but rather seemed to encourage it. In fact, in his opening statement he adverted to the prior investigations, stating his intention to show that Rosse was not involved in the previous thefts. No objection was made when the government's first witness, Postal Inspector Duquette, described his investigations into the nineteen prior thefts, and on cross-examination defense counsel concentrated on trying to establish inconsistencies in the procedures used by Duquette to identify Rosse. Only after a substantial cross-examination of the second postal inspector did counsel move to strike all references to the prior thefts, and then on the inadequate grounds that "knowledge [of Rosse's implication] is not within the witness' knowledge." Evidently, defense counsel here was arguing for exclusion not on the grounds of irrelevance and prejudice, but on the grounds that the agents' actual knowledge of Rosse's activities was not sufficient to link him to the prior thefts. As the trial judge correctly ruled in denying the motion, this objection went to the weight and not to the admissibility of the testimony.

The introduction of this evidence, however, was so irregular and its potential effect so damaging to Rosse that we might be inclined to order a new trial if later events at trial had not largely nullified the prejudice. Upon taking the stand, Rosse testified that another employee had given him the eight marked bills and that he was being "framed" by the postal inspectors. This claim made the testimony about the prior investigations directly relevant since it tended to show that the inspectors had a reasonable basis for focusing their attention on Rosse. At this stage the inspectors' testimony had independent vitality and would then have been proper as rebuttal testimony.

Its introduction earlier, however, violated the strict order of proof since its relevance did not become apparent until Rosse testified.[4] But with no objection whatsoever as to the testimony's relevance, the government had no chance to make a conditional offer of proof. More important, we find no real prejudice to defendant in its premature introduction. United States v. Modern Reed & Rattan Co., 159 F.2d 656 (2d Cir. 1947), must be distinguished. In a prosecution for multiple violations of the Fair Labor Standards Act, the government there introduced evidence during its case-in-chief of a prior conviction of the defendants for similar violations. The defendants later took the stand in their own behalf. On appeal, the government argued that only a harmless variant in the order of proof had occurred since the conviction clearly would have been admissible on cross-examination for impeachment. Rejecting this argument, Judge Swan found reversible error:

> [T]he difficulty is that, absent the initial error, it is not clear that the defense would have followed this pattern. Unless a defendant in a criminal case puts his character in issue or testifies himself neither that nor his credibility can be attacked by the

---

4. It is no answer that defense counsel, by indicating in his opening statement that he would show Rosse was not involved in the previous thefts, had raised the issue so that the government could offer rebutting evidence. It seems to us that the better practice is to wait until the issue is raised in sworn testimony before the jury either in cross-examination of the government's witnesses or in the defense's case itself. The government loses nothing by waiting for the proof, and the more orderly procedure is to wait until the issue is squarely raised before the jury.

prosecution, * * *. His freedom of choice as to such issues may not be taken from him by error previously committed in the trial (658).

Certainly, defendant's case is prejudiced if he must adjust his defense to refuting testimony improperly admitted. The government cannot use the defendant's rebuttal testimony as grounds for claiming independent vitality for its inadmissible evidence.

The present case, however, presents a different situation. Rosse's claim of a frame-up in no way was a defensive parry, or an attempt to repair the damage done by the inspectors' testimony; if anything, it provided a favorable context for that evidence by rendering it directly relevant. Also, defendant was not "forced" to testify to repair his character here, since his counsel in opening statement referred to the prior investigation and announced that Rosse would take the stand.

The conviction is affirmed.

WATERMAN, Circuit Judge (concurring):

I concur in the result.

I believe that the highly improper admission during the Government's direct case of evidence of mail thefts prior to the thefts for which Rosse was indicted was, on the facts of this case, harmless error. Rosse's attorney failed timely to object to the admission of this evidence, and all the other evidence in the case fairly shrieked of Rosse's guilt. If it were not for this overwhelming proof that Rosse was guilty of the crimes charged, I would not join in affirming his conviction. I do not approve of the thrust of my colleaques' opinion; the Government ought not to be permitted to cure a wrongful admission of prejudicial evidence placed before the jury as part of the Government's direct case by pointing to its accidental relevancy to some part of the defendant's direct case. In fact, that relevancy would likely be required, as the majority opinion indicates, for the purpose of rebutting inferences reasonably drawable from the Government's improperly introduced evidence. This process of justifying the Government's action is a bootstrap operation of a type that I, in the normal case, could not approve, irrespective of whether there might be an accidental relevancy later discernible.