Chief Judge Breitel.
Defendant, sentenced to prison from 25 years to life, appeals from a conviction after a jury trial for murder and related offenses committed in the course of robberies and beatings to which two elderly victims were subjected. One of the victims died as a result of the beating.
*530 The only issue of consequence concerns the police search of an automobile and seizure of certain of its contents which inculpated defendant and corroborated the testimony of an accomplice. The search and seizure were effected without a warrant. The automobile had been parked on a public street in the vicinity of the crimes, and through its windows could be seen objects normally used as implements in the commission of a burglary. Just before the commission of the crimes, neighbors had observed three men drive up in the car and leave it to walk in the direction of the victims’ residence.
Defendant contends that the warrantless search and seizure were unauthorized. The People contend that there was probable cause for the search and seizure, and that no warrant was required because an automobile was involved.
There should be an affirmance. The police had ample basis for believing that the parked automobile was involved in the commission of the recently committed crimes and were able to observe through its windows implements used in the commission of crime. The police arrived promptly at the scene of the robberies, but after the culprits had fled. It was essential to establish or confirm their identity and apprehend them. Time was of the essence and it would have been unreasonable for the police to have delayed their investigation of the suspect vehicle further to obtain a search warrant.
On April 16,1969, two elderly persons had been bound, beaten and robbed in an area of the City of Buffalo which had been plagued by like crimes. Police were called promptly and ascertained that there was an unattended automobile parked around the corner of the block from the scene of the crimes. Neighbors, in the early hours of that morning, had observed three men leave the vehicle and proceed in the direction of the victims’ residence. Through the windows of the car, by use of a flashlight, the police observed a pair of black shoes on the car floor, an iron bar resting on the transmission hump, a screwdriver, and a flashlight with a slit-masked lens used in the commission of burglaries and like crimes. The police had also received three days earlier an anonymous telephone call implicating defendant and two relatives in the robbery beatings of elderly people. They also knew, as a result of prior matters, that the automobile license was assigned to a vehicle registered in the *531 name of defendant’s wife. (It was later determined that the license plates had been improperly placed on the parked automobile.)
Shortly before discovery of the automobile, or for that matter, before the police reached the scene of the crimes, police officers responding to the alarm had picked up defendant wearing sneakers and running in a direction opposite to the crime scene. He offered “ jogging ” as his explanation for his activity and attire at that early hour of the morning (2:00 a.m.). Defendant was released when he could not be identified as one of the culprits.
There were more facts of lesser value supporting probable cause for search of the vehicle. All that remains is the urgency, if indeed more than practicality is required, to search and seize the automobile without delay in obtaining a warrant.
The automobile was entered by the police. In the glove compartment the police found “ shocking ” pink cord exactly of the type used in the robberies, and defendant’s identification papers. In the car trunk more of the same cord was found.
The pink cord was a dramatic connection of the user of the automobile with the robberies just committed. Until then there was probable cause that the user was somehow involved in the robberies. But now the ring was closed; the pink cord was truly tell-tale and identified the user of the car as associated with the binding, beating and robbery of the elderly victims.
The police shortly thereafter apprehended defendant.
The reason for haste in searching the automobile was the urgency in identifying the culprit or culprits. They had fled the scene of the crimes and successful flight was a high likelihood, and even more likely if one of the victims should die, as eventually happened.
The search and seizure without a warrant were not only reasonable, but mandatory on police investigating crimes involving public safety and the lives and physical welfare of the victims. For the police to have done less would have been misfeasance.
The Constitutions, both Federal and State, do not forbid all searches and seizures without a warrant but only unreasonable ones (U. S. Const., 4th Arndt.; N. Y. Const., art. I, § 12). There are classic categorical exceptions permitting search without a *532 warrant. There is, - of course, the whole area of consensual search (see, e.g., People v. Carter, 30 N Y 2d 279, 282). In addition, there is seizure of contraband and evidence of crime in plain view, search and seizure incidental to an arrest, and search and seizure of property lawfully in the possession of the police based on probable cause or for the safeguarding of property (see, e.g., People v. Fitzpatrick, 32 N Y 2d 499, 508-509, cert. den. 414 U. S. 1050 [search incident to arrest]; People v. Brosnan, 32 N Y 2d 254, 260 [applying the plain view rule and the incidental to arrest rule]; People v. Perel, 34 N Y 2d 462, 468 [property in police possession] ; People v. Sullivan, 29 N Y 2d 69, 77 [inventory of impounded vehicle]). There is, finally, the instance of search and seizure of an automobile based on exigency provided there is probable cause (People v. Brown, 28 N Y 2d 282, 285-286 [automobile search and seizure on probable cause and evident impraeticality]; but see People v. Spinelli, 35 N Y 2d 77, 80-82, wíiere despite plain view, entry to premises was required, and there was ample opportunity to obtain a. warrant). Notably, the Brosnan case justified a search and seizure on the alternative ground that there had been plain view of incriminating evidence seen through the windows of the vehicle located with, consent of defendant (32 N Y 2d 254, 260, supra). Not material for purposes of the present discussion are “ stop and frisk ”, border searches, airport searches, school custodial searches, and the like, which are only partially subject to the considerations influencing the classical categories.
The Federal cases recognize the same classic categorical exceptions, and have done so particularly with respect to automobiles. Thus, in the oft-cited case of Coolidge v. New Hampshire (403 U. S. 443, 458-464)-, usually relied upon to deny the power to search an automobile on probable cause alone without a time exigency, it was noted that impraeticality in obtaining a prior warrant would permit a warrantless search and seizure (but see Cardwell v. Lewis, 417 U. S. 583, 593-595). More to the point is Chambers v. Maroney (399 U. S. 42, 51-52). Because the search of their automobile was made at the police station after the arrest of the defendants in the Chambers case, the search and seizure could not be justified as incidental to the *533 arrest. Nevertheless, a warrantless search based upon probable cause was sustained without a showing of a continuing exigency.
In both the Brosnan and Chambers cases (supra) it was emphasized that the holding of an automobile must be' justified, as any seizure must. In either instance there must be probable cause (see, also, People v. Brown, 28 N Y 2d 282, 285-286; Dyke v. Taylor Implement Co., 391 U. S. 216, 221-222). This is so because there is no lesser invasion in the detention or holding of an automobile while a warrant be obtained than in an immediate entry of an automobile to search for contraband or. evidence (cf. People v. Brosnan, 32 N Y 2d 254, 260, supra; Chambers v. Maroney, 399 U. S. 42, 51-52, supra). Hence, it is the existence of probable cause which justified the search; an absence of probable cause would bar equally the temporary detention of the vehicle as it Would a warrantless' search.
True* there are traffic control and other emergency situations which may justify a temporary detention of a movable vehicle for purposes other than obtaining a warrant, but such occasions are not now relevant.
Where, however, there is no haste or urgency in the investigation, the automobile subexception does not apply (compare People v. Spinelli, 35 N Y 2d 77, 81, supra and Coolidge v. New Hampshire, 403 U. S. 443, 458, 464, supra, with Cardwell v. Lewis, 417 U. S. 583, 593-595, supra).
In short, the law of search and seizure has not become so recondite that it condemns necessarily prompt reasonable conduct in effecting the interests of public safety in crimes involving murder, assaults, deadly Weapons, and the like. No useful purpose would have, been served by a prior warrant in this case. It would have only engendered inexcusable delay in an immediate urgent investigation of recent crimes, in this case violent and in an area plagued by like crimes. It might also have frustrated apprehension of the qulprits.
Accordingly, the orders of the Appellate Division should be affirmed.
Judges Jasen, Gabbielli, Jones, Waohtleb, Babin and Stevens concur.
Orders affirmed.