Chief Judge Breitel.
Defendant was convicted, upon his guilty plea, of attempted possession of a dangerous drug (marijuana) in the fourth degree (Penal Law, §§ 110.00, 220.15). He was sentenced to a five-year term of probation. On appeal to the Appellate Division, defendant contended that his motion to suppress approximately 50 pounds of marijuana *695 seized from the trunk of his car had been erroneously denied. The Appellate Division reversed, on the law, two Justices dissenting, and ordered suppression. The People appeal.
The issue is whether, under all the circumstances, the warrantless search of defendant’s automobile was reasonable within the meaning of constitutional limitations.
There should be a reversal. The police observed a passenger in defendant’s automobile, driven by defendant, in possession of what they reasonably believed to be a marijuana cigarette. This observation, coupled with defendant’s high-speed flight through city streets in that automobile, and subsequent flight by the passenger from the stopped automobile, warranted a reasonable belief that the automobile contained additional contraband of some kind. There was, therefore, probable cause to search the vehicle for contraband when it was finally brought to a stop. Since the object of the search was a motor vehicle just stopped on the public highway, the search with probable cause was reasonable within the meaning of constitutional limitations.
On the night of March 5, 1973, two New York City plainclothes policemen were on duty patrolling the lower east side, the so-called East Village area, in an unmarked police car. At about 11:00 p.m., they saw a white 1972 Cadillac proceed west on Houston Street and stop for a traffic light at the corner of East Houston Street and First Avenue. Defendant was driving the Cadillac; one Donald Nixon occupied the front passenger seat. The two seemed young and appeared to be looking around nervously. Officer Cyran, who was driving the police car, pulled the car parallel to the passenger’s side of the Cadillac. As he did so, both officers saw the passenger, Nixon, holding what they believed to be a marijuana cigarette in his hand, and rubbing it against the side of his right cheek near his lip. The cigarette was narrower than a normal cigarette, and had rolled-up ends, unlike a normal cigarette’s cleanly-cut ends.
When the traffic light changed, the Cadillac turned into First Avenue, and the police car followed. When defendant’s car stopped for a traffic light, at First Avenue and East Second Street, Officer Quinn left the police car and walked over to the driver’s side of the Cadillac. He rapped on the window, displayed his shield “up right close to the window”, and said “Police”. After looking directly at Officer Quinn, defendant immediately accelerated the Cadillac, which “fish *696 tailed” and swerved toward the officer, and took off north on First Avenue at a very "high rate of speed”. Officer Quinn reentered the police car, called for assistance over the police radio, and the police car gave chase after the Cadillac.
The chase was conducted at speeds estimated in excess of 65 miles per hour for about 14 blocks through the streets of the lower east side, "endangering lives and property”. The high-speed chase ended only when defendant was forced to stop his car because a fire engine blocked East 13th Street at the scene of a fire and prevented further escape.
When the Cadillac came to a halt, Nixon fled up East 13th Street toward First Avenue. Officer Quinn pursued him on foot. As defendant also left the Cadillac, Officer Cyran grabbed him by the arm and placed him under arrest. At least three other police cars, responding to the earlier police call, had already arrived. Defendant twice attempted to push Officer Cyran away from him in an apparent effort to escape, and finally was handcuffed by a uniformed officer. Officer Cyran then went to the assistance of Officer Quinn.
By this time, however, Nixon had been apprehended by Officer Quinn after a brief struggle a half a block away. A marijuana cigarette was taken from his jacket pocket. Nixon was brought to a marked police car parked near the corner of First Avenue and East 13th Street.
Officer Cyran returned to where defendant was still standing in the street handcuffed. He asked defendant for his operator’s license and automobile registration, and was told that these documents were in the glove compartment of the Cadillac. The policeman opened the door, took the keys out of the ignition, and, after fruitlessly searching the front seats, opened the glove compartment and found the automobile’s registration certificate. The officer then went to the trunk of the car, opened it, and saw a large brown army duffle bag. When he unzipped the duffle bag, Officer Cyran found a green plastic garbage bag. The bag was torn, and through the tear Officer Cyran saw a large quantity of marijuana. The policeman closed the trunk, leaving the bag inside, and drove the car to the station house, where the bag was removed from the trunk. Approximately 50 pounds of marijuana were recovered.
The Federal and State Constitutions do not prohibit all warrantless searches and seizures, but only those which are "unreasonable” (US Const, 4th Armdt; NY Const, art I, § 12; Cady v Dombrowski, 413 US 433, 448; Carroll v United States, *697 267 US 132, 147; People v Singleteary, 35 NY2d 528, 531; People v Perel, 34 NY2d 462, 466). Thus, the ultimate standard set forth in constitutional limitations is reasonableness (Cady v Dombrowski, supra, at p 439). Whether a search and seizure is reasonable depends upon the facts and circumstances of each case (id., at p 440; Cooper v California, 386 US 58, 59; Carroll v United States, 267 US 132, 149, 161, supra; People v Marshall, 13 NY2d 28, 34-35).
In construing the Fourth Amendment, the Supreme Court has said that "except in certain carefully defined classes of cases, a search of private property without proper consent is ’unreasonable’ unless it has been authorized by a valid search warrant” (Camara v Municipal Ct., 387 US 523, 528-529; see Katz v United States, 389 US 347, 357). One class of cases constituting an exception to the general rule is automobile searches (see Cady v Dombrowski, 413 US 433, 439, supra; People v Brown, 28 NY2d 282, 285-286; for recent restatements of the exceptions to the warrant requirement see People v Singleteary, 35 NY2d 528, 532, supra; United States v Mapp, 476 F2d 67, 76-77).
In Carroll v United States (267 US 132, supra), the genesis of the so-called "automobile exception” to the warrant requirement, the court held that an automobile moving on the open highway may be seized and searched without a warrant if there is probable cause to believe that the vehicle contains contraband. The court emphasized that, for purposes of the constitutional limitation, there is a "necessary difference” between the search of a stationary structure like a house and a search of a mobile vehicle which has been stopped on the open road (id., at p 153). The difference, the court stated, is due to the mobility of the vehicle, which renders impracticable efforts to secure a warrant (id.).
Later cases have refined and, in some instances, have expanded the automobile exception. In Chambers v Maroney (399 US 42), an automobile was seized in a public parking lot and later searched at the police station while the occupants were in custody, with probable cause but without a warrant. The search was sustained without a showing of continuing exigency based upon actual mobility. Given probable cause, the court also stated, an immediate warrantless search of an automobile under these circumstances would be reasonable under the Fourth Amendment (id., at p 52).
In Coolidge v New Hampshire (403 US 443, 447-448), de *698 fendant’s automobile was seized while parked in his driveway, and later searched at the police station while defendant was in custody, with probable cause but without a valid warrant. The court, in the plurality opinion, holding the search and seizure unconstitutional, distinguished the Chambers case on two separate, but interrelated, grounds. The vehicle in Coolidge was not actually mobile when seized, and, in fact, was in effective police custody at that time. Indeed, the Coolidge plurality emphasized that the decision was directed only to whether the initial intrusion was justified. Chambers is controlling in cases where the initial confrontation between the policemen and the citizen is on the open highway, with the policemen having probable cause to search (id., at p 463, n 20).
Moreover, in Coolidge it was recognized that there is a "constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose” (p 463, n 20; see Cady v Dombrowski, 413 US 433, 446-447, supra). The difference is crucial; it reflects the balance between the pragmatics of social protection and the ideal of the utmost personal privacy tolerable in organized society.
The protection of personal privacy, not property rights, is the primary object of constitutional limitations on search and seizure (see Cardwell v Lewis, 417 US 583, 590-591 [plurality opn]; Cady v Dombrowski, supra, at p 442; Katz v United States, 389 US 347, 351, supra; People v Perel, 34 NY2d 462, 467, supra). Indeed, it has been said that "[t]he search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one’s person or of a building” (Cardwell v Lewis, supra, at p 590; see Almeida-Sanchez v United States, 413 US 266, 279 [Powell, J., concurring]). This, of course, is because one has a lesser expectation or need of privacy in an automobile than in one’s home (Cardwell v Lewis, supra, at p 590; United States v Free, 437 F2d 631, 635). Thus, less stringent standards should be applied to the search of a vehicle than to a home, a house, or a place of business.
The police had reasonable cause to stop defendant’s automobile when they saw Nixon holding what they reasonably believed to be contraband, a marijuana cigarette. Immediately after Officer Quinn identified himself as a policeman, defendant accelerated and led the police on a chase at breakneck *699 speed for about 14 blocks through a heavily populated area. This desperate attempt by defendant to escape endangered "lives and property”, according to. Officer Quinn, and certainly endangered the lives of the police.
True, it has been said that flight, as evidencing consciousness of guilt, is of "slight value, and of none whatever unless there are facts pointing to the motive which prompted it” (People v Florentino, 197 NY 560, 567; see People v Baker, 26 NY2d 169, 174; see, generally, Richardson, Evidence [10th ed], § 167, p 135). This is because flight may be motivated by many factors other than guilt, and should not, therefore, be weighted too heavily in deciding guilt upon a plenary trial where the standard is "beyond a reasonable doubt”. The standard of "beyond a reasonable doubt” is, of course, not applicable to searches and seizures, and certainly not to searches of mobile vehicles. Instead, the standard is probable cause, that is, whether all the facts and circumstances would lead a prudent police officer to believe that the vehicle contained contraband (Carroll v United States, 267 US 132, 149, supra; People v Marshall, 13 NY2d 28, 34-35, supra). Thus, flight has been held to be an important factor reinforcing a belief that a vehicle contains additional contraband beyond what initiated the first cause for stopping the vehicle (see, e.g., People v Hill, 12 Cal 3d 731, 748; State v Barry, 216 Kan 609; State v Vandeveer, 23 Ariz App 331; cf. State v Finklea, 313 So 2d 224, 226 [La], and especially dissenting opn at pp 226-227; People v Obadele, 58 Mich App 139, 143).
People v Martin (48 AD2d 213) is inapposite, assuming that it was correctly decided. The Martin case involved a search of a vehicle based upon an unknown informant’s unverified tip, that the vehicle would contain contraband, plus flight. Moreover, the analysis depended upon a splitting of the scanty facts upon which the police first acted from the facts of the extraordinary flight from the police following the effort to stop the car. To be sure, the facts and circumstances of a questioned search must be examined as a whole and not compartmentalized as if the scenario of events consists of disparate occurrences. In the instant case the police were acting not on an unknown informant’s unverified tip, but on their own observation and their reasonable belief that defendant’s car contained at least some contraband.
Since the search of defendant’s automobile seized on the city streets was conducted with probable cause, it is immate *700 rial whether defendants were in police custody at the time. As in the Chambers case (399 US 42, 52, supra), the police could have removed the vehicle to the station house and searched it there, notwithstanding that defendant was in custody. That they chose to conduct the search immediately on the scene does not render the search invalid (id.).
Moreover, to require the police here to have taken the vehicle to the station house for an inventory search would make little common sense. Expenditure of additional enforcement time and energy would have been required, with no compensating protection or benefit to defendant. Also, to encourage such procedure in general might work to expose innocent persons to greater unnecessary interference in instances of lawful but unproductive searches; advantages to such persons would seem to lie in exposure of the search as unproductive as soon as reasonably practicable.
Accordingly, the order of the Appellate Division should be reversed, and the case remitted to the Appellate Division for determination of the facts (CPL 470.40, subd 2, par [b]).