■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MURRAY SCHNEIDER, Respondent.—Appeal, as limited by the People's brief, from so much of an order of the County Court, Nassau County, dated November 12, 1976, as, after a hearing, granted defendant's motion to suppress certain tangible evidence. Order reversed insofar as appealed from, on the law and the facts, and motion to suppress tangible evidence denied. In our view sufficient probable cause existed to support defendant's arrest and, accordingly, the evidence seized was improperly suppressed by the County Court. The facts underlying the particular incident in question, which were adduced at the suppression hearing solely through the testimony of the People's witnesses and accepted by the County Court, were as follows: On September 16, 1975, at about 1:00 P.M., the wife of the superintendent of an apartment house at 55 Lenox Road in Rockville Centre, Long Island, observed the defendant, who was not a tenant of the building, approach the back door of the building, look from left to right a few times "in a guarded manner" and then enter the building. While she considered defendant's behavior odd, she nevertheless assumed that it was innocent and went about her business. About 20 minutes later the superintendent's wife heard a noise upstairs in an apartment which she believed to be empty, which sounded like a thud or a footstep. She decided to go up and check on the matter. Upon arriving upstairs, she saw the defendant standing in front of one of the apartment doors. She hid behind a corner in the hallway and observed defendant for three minutes. Defendant rang the doorbell of apartment 2-V several times and then tried the doorknob by turning it from left to right. Defendant put his hand in his pocket and the superintendent's wife heard what she thought was the jingling of a bunch of keys. The woman returned downstairs and told her husband, Mr. Gemmell, the superintendent, about defendant's behavior, which she considered suspicious, and that defendant was dressed in a white suit. The superintendent left his apartment and saw the defendant, wearing a white suit, in the apartment house lobby. Defendant was carrying a ring of keys in his hand and more keys were jingling in his pocket. Defendant then left the building and was followed by the superintendent. The superintendent met a colleague, a Mr. Brock, from a nearby apartment house, and together, in the latter's car, they followed defendant. When they pulled abreast of defendant, the other superintendent recognized defendant to be the man whom he had seen sometime before standing in front of a door of his apartment house, apparently trying to gain entry, and who had fled on that occasion upon Brock's arrival on the scene. Defendant finally entered his car, a blue vehicle, and Gemmell took down the license plate number. Both superintendents then parted company. Gemmell went home, called the police and advised them that a burglary suspect had been in his building. Upon the arrival of a police officer, he gave the officer the background information as well as a detailed description of defendant's appearance and the license number of the defendant's vehicle. Subsequent thereto, another police officer, in response to a radio broadcast describing defendant and his car, observed defendant in the general vicinity and began to pursue him with his lights on. Defendant drove into a municipal parking lot at a high rate of speed. The officer managed to maneuver his car so that it was proceeding straight toward defendant's car in the lot. Defendant went into reverse in order to flee from the officer, but was unsuccessful. After defendant's vehicle

came to a stop, the officer saw defendant lean over as though he were going to grab something. The officer pulled out his gun, exited his car and directed the defendant to exit his car. Other officers and Gemmell, the superintendent, also arrived at the scene. A positive identification was made of the defendant and he was arrested. Defendant and his car were then taken to the police station where an inventory of the car revealed burglar's tools and several items of contraband. The County Court held that since defendant had been arrested pursuant to a police bulletin, the appropriate test in measuring the response of the police was to ascertain whether the sender of the information upon which the radio bulletin was based, i.e., Gemmell, had probable cause to act (citing *People v Lypaka,* 36 NY2d 210). The County Court held that Gemmell's knowledge was insufficient to establish probable cause. We disagree. The knowledge possessed by Gemmell, who was in charge of maintenance and security in his apartment house, was similar, if not greater, than that quantum of knowledge which the Supreme Court of the United States held was sufficient to constitute probable cause in *Peters v New York* (392 US 40). In *Peters,* an off-duty police officer heard a strange noise outside his door. He investigated by looking through his peephole. He saw two men, whom he had never seen before in his 12 years in the building, tiptoeing furtively around the hallway. He made a telephone call for help and dressed quickly. After completing these two acts, he noticed that the two men were still engaged in the same behavior that he had previously observed. The officer then entered the hallway and the men fled. The officer pursued and he apprehended one of the two men. He frisked him and discovered burglar's tools. The New York State Court of Appeals upheld the search on the basis of section 180-a of the former Code of Criminal Procedure, which provided that a police officer could stop a person in a public place (i.e., an apartment hallway) whom he reasonably suspected of having committed or of being in the process of committing a crime and could frisk the detainee if he reasonably suspected that the latter was armed (see, also, CPL 140.40, subds 1, 3). The Supreme Court of the United States, in upholding the police officer's action, did so on the ground of probable cause. The Supreme Court held in *Peters* (p 66) "that for purposes of the Fourth Amendment the search was properly incident to a lawful arrest" for attempted burglary. The Supreme Court, in *Peters,* also stressed that flight may be an important element establishing probable cause (see, also, *People v Kreichman,* 37 NY2d 693; *People v Dread,* 49 AD2d 401; *People v Archiopoli,* 39 AD2d 748). In fact, "flight has been held to be an important factor reinforcing a belief that a vehicle contains additional contraband beyond what initiated the first cause for stopping the vehicle" *(People v Kreichman, supra,* p 699). Nor was it necessary in order to sustain the search herein for the police to have had knowledge of a specific consummated burglary at the time of the search. There was probable cause to arrest for attempted burglary (see *Peters v New York, supra)* or, at the very least, trespass. It is only necessary that probable cause exist to believe that some crime may have been committed *(People v Merola,* 30 AD2d 963; *People v Messina,* 21 AD2d 821; *People v Cassone,* 20 AD2d 118, affd 14 NY2d 798, cert den 379 US 892). Accordingly, the order appealed from must be reversed insofar as appealed from, and defendant's motion to suppress tangible evidence denied. Damiani, Shapiro and Suozzi, JJ., concur; Hopkins, J. P., and Margett, J., dissent and vote to affirm the order for the reasons set forth in the oral decision of County Judge Vitale.