Jasen, J.
(dissenting). Certainly, I have no quarrel with two of the conclusions reached by the majority, to wit: that there existed a sufficient basis for the police officers to approach defendant in order to ask questions (see People v De Bour, 40 NY2d 210); and that an individual has the absolute right to refuse to answer inquiries posed to him by law enforcement officers (see People v Rogers, 48 NY2d 167, 176 [dissenting *594 opn]). However, I simply cannot agree with the majority’s holding that the police officers could not pursue defendant. Given the particular facts of this case, the officers were completely justified in both chasing and seizing defendant, and searching the vanity case. A contrary conclusion serves merely to deal another serious and unjustifiable blow to effective law enforcement.
This is another in a vast line of cases where the defendant asserts as his sole ground for reversal that the actions of the police officers violated his constitutionally guaranteed right to be free from unreasonable searches and seizures. (US Const, 4th Arndt; NY Const, art I, § 12.) While this observation surely does not relieve the courts of their responsibility of overturning a criminal conviction when a valid constitutional claim is asserted no matter how unpleasant the thought that a criminal will "go free because the constable has blundered” (People v De Fore, 242 NY 13, 21 [Cardozo, Ch. J.]), courts should not blindly reach out and find merit in a constitutional claim where none exists. It seems odd that an admittedly guilty person should be set free, especially where, as here, the police officers acted in a most reasonable manner.
As the majority candidly concedes, the police officers were justified in approaching defendant to request information. Defendant was observed in a high-crime area carrying a woman’s vanity case, an item of luggage often times used by a burglar when absconding with his bounty. Further, defendant cast numerous glances at the police officers when they passed him on University Avenue. As Officer Hanley pulled the car to the side of the road, defendant then changed direction to return to the far side of the street. Once the officers made a U-turn to approach defendant, his pace quickened in an obvious attempt to avoid confrontation.
Seeing these highly suspicious acts, the officers were absolutely justified in pulling their car alongside defendant and, after displaying a shield, requesting defendant to speak to them. In addition, the officers acted reasonably in following defendant a short distance to repeat their request. Certainly, the officers could have believed that defendant merely could not hear them when they first approached, due to traffic noise or the like.
Then, as Officer Brosnan began to get out of the car, defendant ran away, clutching the vanity case to his breast. The officers had yet to ask defendant a single question as to *595 his activities, and certainly did not physically intimidate defendant. No guns were drawn, no coercive language was employed, and no binding orders were transmitted.
Yet, faced with these facts of an incriminating nature, the majority today holds that the officers could do no more than follow defendant to observe him from a distance. Such a conclusion borders on the absurd. The officers had every right, if not the obligation, to pursue defendant in order to investigate this highly suspicious conduct. In my opinion, once defendant ran away, the officers’ level of suspicion was elevated to one of probable cause, remembering that "[p]robable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing that [an] offense has been committed” by the person to be arrested. (People v Oden, 36 NY2d 382, 384; Brinegar v United States, 338 US 160, 175-176.)
It is true that flight from police, in and of itself, would not constitute a sufficient basis for arrest. However, it is equally as true that defendant’s flight is an important factor to be considered when determining whether probable cause existed. (See, e.g., Sibron v New York, 392 US 40, 66-67; People v Kreichman, 37 NY2d 693, 699; People v Schneider, 58 AD2d 817, 818; People v Dread, 49 AD2d 401, 405; People v Archiopoli, 39 AD2d 748.) Here, defendant’s flight certainly bolstered and confirmed the officers’ suspicion — based upon their prior observations — that defendant was engaging in criminal activity. Thus, the officers had probable cause to arrest defendant, and the arrest was entirely proper.
Nor can I accept the majority’s holding that defendant did not evince an intent to abandon the vanity case. I would agree completely with the unanimous Appellate Division that under the circumstances present here "there was an abandonment of the bag.” (65 AD2d, at p 714.)
As the above-stated analysis demonstrates, the action of the police officers in seizing defendant were totally reasonable and beyond reproach. Thus, this is not the typical case where the theory of abandonment is utilized to explain the dissipation of taint flowing from illegal police activity. (E.g., People v Boodle, 47 NY2d 398, cert den 444 US 969; People v Townes, 41 NY2d 97.) Instead, the record reveals that this is a case where defendant attempted to divest himself of the drugs and gun so that no incriminating evidence could be discovered by the police who were rightfully in pursuit.
*596 When "[t]he actions of defendant indicate an intent to purposefully divest himself of possession of the [property]”, an abandonment will be said to have occurred. (People v Brown, 40 AD2d 527-528.) Here, there can be no doubt but that defendant, by throwing the vanity case on the pile of junk in the corner of the basement, intended to rid himself of the case containing incriminating evidence. He obviously did not harbor an expectation of retrieving the case, nor is there any evidence that he threw the case in the corner after the police arrived. Rather, defendant attempted to divest himself forever of the damning evidence before the law enforcement officers appeared. For this reason, the warrantless search of the vanity case was proper, inasmuch as defendant abandoned the case, thus relinquishing his privacy interest therein.
Accordingly, since the seizure of defendant and the search of the vanity case were eminently proper, I would affirm the order of the Appellate Division.
Chief Judge Cooke and Judges Jones and Fuchsberg concur with Judge Meyer; Judge Jasen dissents and votes to affirm in a separate opinion in which Judges Garríelo and Wachtler concur.
Order reversed, etc.