■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PAUL ESCALANTE, Respondent. — Appeal by the People from an order of the Supreme Court, Richmond County (Goldberg, J.), dated July 7, 1981, which, after a hearing, granted defendant's motion to suppress a gun seized during a search of his car. Order reversed, on the law, motion denied and matter remitted to the Supreme Court, Richmond County, for further proceedings. The police obtained information from a reliable informant that defendant, in possession of a sawed-off shotgun, planned to commit a robbery that evening. The informant described the car which the defendant would drive to the scene of the robbery, told the police where the defendant could be found before he set out to commit the robbery, and stated that if the defendant planned to stop at a bar on the way, he would place the gun, in a bag, in the trunk of the car. Detective Monahan, after ascertaining the license plate number of the car registered to defendant, proceeded to the location mentioned by the informant and observed a car matching the description given by the informant and with defendant's license plate. After keeping the car under surveillance for some time, Monahan observed the defendant place a bag in the trunk of the car, and drive off. Monahan followed defendant's car for two blocks, at which point defendant stopped near a bar. As defendant exited his car, Monahan approached him and asked to see his license and registration. Defendant voluntarily admitted that he had failed to pay several fines for traffic violations, and Monahan, after verifying that defendant's license was suspended, placed him under arrest for driving with a suspended license. Some 45 minutes later, after defendant's car had been driven to the police station, Monahan searched the trunk without a warrant and found, in the bag, a sawed-off shotgun. Defendant was charged with criminal possession of a weapon in the third degree. Criminal Term granted his motion to suppress the gun, on the ground that the request to see defendant's driver's license and registration was not based upon probable cause, and hence, could not justify his arrest and the subsequent search of the car. We reverse. Monahan was in possession of detailed information from a reliable informant that defendant illegally possessed a gun. This information, at the very least, constituted a sufficient basis for Monahan to conclude that criminality was afoot, so that the common-law right of inquiry was triggered (see *People v De Bour,* 40 NY2d 210; *People v Stewart,* 41 NY2d 65). Once Monahan became aware of defendant's traffic violations he was required to arrest him on that ground. The consequent search of the car could then have been justified on either of two alternate grounds: either that probable cause to arrest for possession of a weapon still existed; or as a constitutionally permissible routine inventory search of an automobile subsequent to its lawful seizure (see *South Dakota v Opperman,* 428 US 364). The fact that the search was not related to the immediate ground for the arrest was thus, under these facts, irrelevant. Finally, the warrantless search of the car after it had already been driven to the police station, when there is no danger to the safety of the officers

or of evidence being destroyed (cf. *Preston v United States,* 376 US 364), was lawful in view of Monahan's probable cause to believe that he would find a gun in the car (see *Chambers v Maroney,* 399 US 42; *South Dakota v Opperman, supra; Cardwell v Lewis,* 417 US 583; *People v Kreichman,* 37 NY2d 693, 699-700). Titone, J. P., Weinstein, O'Connor and Rubin, JJ., concur.