■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD J. VALO, Appellant. — Appeal from a judgment of the County Court of Rensselaer County (Clyne, J.), rendered December 29, 1981, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the fifth degree. At 11:15 P.M. on November 9, 1980, police officers Ralph Isler and Nicholas Kaiser, on routine patrol in the City of Troy, drove by Church Street alley and noticed defendant and two other individuals standing in the dark and otherwise deserted alley. The officers decided to circle around the block and come back and see what they were doing in the area. As they did so, they heard a burglar alarm ringing in a market about a block farther down the alley. They briefly checked the market, saw that its windows and door appeared intact, and then drove back into the alley where defendant and his two companions were still standing. No one else was anywhere in the vicinity. At the subsequent suppression hearing, Officer Isler testified that as they drove up, defendant was holding a "silver chrome-like object" which he then quickly put in his pocket; that the three people turned and started walking away from the approaching patrol car; and that as he got out of the car, he could detect a strong odor of burning marihuana. Officer Isler stated that he immediately asked defendant what he had put into his pocket and, when defendant, without answering, started to reach into his pocket, Isler said, "No, I'll get it", reached into the pocket, and withdrew a pair of forceps. Isler further testified that when he then began examining the ground nearby for marihuana cigarettes or butts, defendant bolted away down the alley. Officer Kaiser ran after defendant, and Isler pursued in the patrol car. Two blocks away Kaiser caught up with defendant. Defendant pushed him away, kept running, and collided with Isler who had just gotten out of the patrol car. Then, according to Isler, after a brief struggle the two officers subdued defendant, patted him down for weapons, and "in the process of advising him that he was under arrest for obstructing governmental administration, we began to look through his pockets". They found a small box containing 142 LSD tablets, a bag of marihuana, and $203 in cash. As a result of finding these items, they placed drug charges against defendant. Defendant gave a differing version of some of these events. The suppression court found Officer Isler's testimony to be credible, rejected defendant's, and denied the motion to suppress. Subsequently, defendant pleaded guilty to criminal possession of a controlled substance in the fifth degree, a class D felony, and was sentenced to one to four years' imprisonment. He now appeals the denial of his motion to suppress the LSD, marihuana, and currency. Clearly, the suppression court was entitled to make a determination concerning the credibility of the witnesses appearing before it, and we will not disturb that determination on appeal. Concerning the legality of the initial encounter between the officers and defendant, in order for the police to have made a valid investigative stop, a "founded suspicion that criminal activity is present" must have existed, based on "knowledge possessed

at that moment and any reasonable inferences" (*People v De Bour,* 40 NY2d 210, 215-216). This suspicion may not have been based on behavior which was merely innocuous or which was equally susceptible of innocent or culpable interpretation (*id.,* at p 216). Here, when the officers approached defendant and his companions in the alley, it was late at night in a commercial district known as a high-crime area. All of the stores were closed. A burglar alarm was ringing just a block away. Defendant had a shiny chrome-like object in his hand, which the officers could reasonably have suspected to be a burglary tool or a weapon, and which defendant quickly pocketed. He and his companions started walking away from the approaching patrol car, and there was a strong marihuana odor in their immediate vicinity. These circumstances and the reasonable inferences which could be drawn from them strongly supported a suspicion of criminal activity, and, therefore, the police were clearly authorized to make their initial encounter and inquiry (cf. *People v Howard,* 50 NY2d 583, cert den 449 US 1023; *People v De Bour,* 40 NY2d 210, *supra*). Furthermore, Officer Isler's seizing the forceps from defendant's pocket was, under the circumstances, a reasonable police action in the nature of a frisk (see *People v De Bour, supra,* p 221). Having seen defendant pocket a shiny metallic object which might easily have been a knife or other weapon, Isler could certainly have been expected to ask for clarification of that object and to have feared for his safety when, in response to his question, defendant started to reach into his pocket. Isler did not touch defendant until after defendant moved, and then his search was strictly limited in scope to the one pocket and one item (*id.*). As for the legality of the officers' pursuit of defendant, they were entitled to undertake the "limited detention that is involved in pursuit" (*People v Howard, supra,* p 592) if they had probable cause to believe that the suspect had committed, was committing, or was about to commit a crime (*People v Howard, supra,* p 586). Clearly, the circumstances already outlined here would support such a belief. The burglar alarm had alerted the officers that a burglary probably had either occurred or been attempted, and the unexplained, hurriedly pocketed forceps and the odor of marihuana were certainly not innocuous facts. Concerning defendant's subsequent arrest, although he correctly contends that flight alone does not constitute probable cause for arrest, where, as here, indicia of criminal activity already existed, flight is an important factor in determining probable cause (*People v Howard,* 50 NY2d 583, 592, *supra;* see, also, *Sibron v New York,* 392 US 40, 66-67; *People v Kreichman,* 37 NY2d 693, 699; *People v Schneider,* 58 AD2d 817, 818). The instant case is analogous to the situation in *Sibron v New York* ([*Peters v New York*] 392 US 40, *supra*), where a police officer heard noises at his apartment door, looked out, and saw two men whom he did not recognize tiptoeing around in the hallway. When he slammed his door loudly, the two men ran down the stairs. The combination of the men's furtive actions and their flight at the officer's approach was found to support the officer's pursuit and arrest (*id.,* at p 66). Similarly here, at the point when defendant fled, the police had probable cause to arrest him. Finally, having made a legal arrest, the search of defendant's pockets incident to the arrest was authorized and was reasonably limited in scope (*id.,* at p 67), and the results of that search properly justified the placement of further charges against defendant. Accordingly, the judgment of conviction should be affirmed in all respects. Judgment affirmed. Mahoney, P. J., Kane, Casey, Yesawich, Jr., and Levine, JJ., concur.