THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JULIO ORTIZ, Appellant.

Second Department, September 17, 1984

### APPEARANCES OF COUNSEL

*Lawrence M. Herrmann (Ronald D. Degen* of counsel), for
appellant.

*Thomas A. Duffy, Jr., Deputy Attorney-General (Mark M.
Baker* of counsel), for respondent.

### OPINION OF THE COURT

BROWN, J.

On this appeal, defendant challenges, *inter alia,* the
denial, after a hearing, of his motion to suppress certain
physical evidence (i.e., $3,700 in marked bills) recovered
during a search of his person incident to a warrantless —
and it is argued, unlawful — arrest.

The only witness called at the suppression hearing was Detective Albert Coletto, who at the time of the arrest was assigned to the Long Island Task Force of the Drug Enforcement Administration. He testified that, on January 23, 1980, as part of an undercover buy-and-bust operation, he had followed a suspect, Police Officer Leroy Bennett, from the latter's apartment in Queens County to a candy store in Kings County. Earlier in the day an undercover officer had supplied Bennett with marked currency. Based upon information obtained through the use of authorized telephone wiretaps, the police knew that Bennett was going to the candy store to transact a cocaine sale on behalf of the undercover officer. Armed with this information, the police obtained a warrant to search the premises for the marked currency, cocaine and materials used in the packaging and distribution of cocaine. Detective Coletto testified that, while his superiors were securing that warrant, he watched Bennett enter the store and that he remained on the scene after Bennett's departure in order to aid his fellow officers in the execution of the warrant. Upon being informed that the warrant had been issued, the officers, who were in plain clothes, entered the premises with guns drawn, displayed their shields and identified themselves as police officers. Detective Coletto stated that he observed at that time that the store was divided into two parts by a counter topped with a plexiglass shield which ran the width of the store. He also noted that in the rear portion of the store, behind the counter, there was a back room.

When the officers entered, there were four people in the store, including defendant. All were in the nonpublic area behind the counter, and one of them (but not the defendant) was in the back room. At the sight of the officers, the other three fled into the back room. Some of the officers then went behind the counter in an effort to apprehend the fleeing men, while others went around to the outside rear of the store to block any escape. Eventually, the officers were able to gain entrance to the back room where they apprehended the four individuals and brought them to the front of the store. After frisking them for weapons, the four were detained in the front of the store while the officers conducted a search of the premises pursuant to the search

warrant. As a result of that search, three handguns and a quantity of cocaine were recovered from concealed locations in the back room. At that point all four men were placed under arrest and searched as an incident thereto. In searching defendant the police discovered $3,700 of the marked currency in his breast pocket. The balance of the marked currency, $700, was found in the possession of one of the other men, Marrero, the owner of the store.

The hearing court denied the motion to suppress, concluding, *inter alia,* that the police officers who had knowledge of the drug transaction which had transpired on the premises viewed the flight of the four individuals more seriously than one might view a person simply leaving a room under ordinary circumstances, particularly when coupled with the fact that they had announced their purpose and authority and had identified themselves by displaying their shields. The hearing court found that these facts, taken together with the contraband discovered in the back room, were sufficient to constitute probable cause to arrest. We affirm.

The validity of the search of defendant's person is dependent upon whether there was probable cause to arrest him. Looking at all the facts here present, we find that there was probable cause for the warrantless arrest of defendant. In viewing the facts, it must be recognized that the existence of probable cause to arrest requires not "evidence sufficient to warrant a conviction * * * but merely information which would lead a reasonable person who possesses the same expertise as the [arresting] officer to conclude, under the circumstances, that a crime is being or was committed" (*People v McRay,* 51 NY2d 594, 602; *People v Valentine,* 17 NY2d 128). In the case at bar, the police knew that the premises were being used for drug trafficking and they knew that Bennett had gone into the store just prior to the raid for purposes of a drug transaction and thus could anticipate that the other participant or participants in the transaction were in the premises. At the time they entered the store defendant was in the nonpublic area of the store — as were the other three individuals — thus diminishing any probability that he was simply an ordinary customer. It is clear that ordinarily an individual's

mere presence at the scene of a drug transaction or other criminal activity does not itself constitute probable cause (see *Ybarra v Illinois,* 444 US 85; *People v Costales,* 39 NY2d 973; *People v Martin,* 32 NY2d 123; see, also, *People v Nieves,* 36 NY2d 396). In *Martin,* however, while finding a lack of probable cause to arrest the defendant in that case, the court also added a caveat that "under certain circumstances * * * presence at the scene might furnish a trained policeman with probable cause to effect an arrest" (*People v Martin, supra,* p 125). Such circumstances exist in this case. Upon the entry of the police, defendant fled into a back room and concealed himself for a time. This flight and resultant furtive conduct, which might have afforded defendant an opportunity to dispose of any contraband, could readily have been viewed by the police as conduct indicating that defendant was involved in the drug transaction on the premises. As the Supreme Court stated in *Sibron v New York* (392 US 40, 66-67), "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the [arresting] officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest" (see, also, *People v Sbraccia,* 92 AD2d 628). Thus, in our view, probable cause to arrest defendant existed at the time defendant was apprehended in the back room, based upon defendant's presence at the known drug trafficking location and his flight and furtive conduct upon the arrival of the police.

The instant case is distinguishable from those in which an individual merely happens to be on the scene or arrives on the scene during the execution of a search warrant for a premises which police suspect is connected with narcotics or other criminal activity (see, e.g., *Ybarra v Illinois,* 444 US 85, *supra; People v Costales,* 39 NY2d 973, *supra; People v Nieves,* 36 NY2d 396, *supra*). Here, defendant, who was at the scene of a drug transaction, did not play the role of an unaware innocent bystander; rather, he fled and successfully concealed, if only momentarily, himself and his activities from the police.

Moreover, even if probable cause to arrest did not exist at the time defendant was initially detained, it cannot be

gainsaid that upon discovery of the cocaine and weapons in the back room there existed probable cause to believe that the four individuals who had secreted themselves in that room upon the arrival of the police were involved in criminal activity. Accordingly, the arrest made subsequent to that discovery and the search incident thereto were lawful.

The concept of probable cause, as its very name implies, deals with probabilities. The rules for its application are not technical but rather concern the "factual and practical considerations of everyday life on which reasonable and prudent men * * * act" (*Brinegar v United States,* 338 US 160, 175). In this case, those considerations and probabilities supported a reasonable conclusion by the police that defendant was involved in drug transactions on the premises. Thus, there was probable cause to make the arrest and the physical evidence was lawfully seized pursuant to that arrest.

GIBBONS, J. P. (dissenting). Simply stated, the issue which divides the court on this appeal is the existence of probable cause for the warrantless arrest of the defendant on the premises of a Brooklyn candy store on the evening of January 23, 1980, following the execution of a search warrant for those premises. A quantity of marked money was seized from the defendant's person as the result of a search conducted incident to that arrest, and it was this money which provided a principal link between the defendant, a former correction officer and candidate for patrolman, with no prior criminal record, and the sale of narcotics for which he was ultimately convicted. In my view, the probable cause necessary to effectuate an arrest was lacking in this case, and the products of the resulting search must therefore be suppressed.

It is axiomatic that where, as here, an individual is arrested and searched without a warrant, it must at least appear more probable than not that a crime has been committed and that the person to be arrested was its perpetrator (*People v Carrasquillo,* 54 NY2d 248, 254). Thus, conduct which is equally consistent with guilt or innocence will not suffice to constitute probable cause (*People v Carrasquillo, supra*), and with particular relevance to the instant case, it has repeatedly been held that a

person's mere propinquity to others who are independently suspected of criminal activity is just such an ambiguous circumstance which will not support a warrantless arrest (see *Ybarra v Illinois,* 444 US 85; *People v Costales,* 39 NY2d 973; *People v Martin,* 32 NY2d 123; *People v Smith,* 21 NY2d 698; *People v Williams,* 79 AD2d 929, app dsmd 53 NY2d 866; see, also, *People v Nieves,* 36 NY2d 396). In *Ybarra v Illinois (supra),* for example, it was held, *inter alia,* that a customer's mere presence on the premises of a tavern for which a search warrant had been issued based on probable cause to believe that the bartender had been selling narcotics was insufficient, standing alone, to support his search without a warrant (accord *People v Nieves, supra*), while in *People v Martin (supra),* it was further held that an individual's mere presence at the scene of a narcotics transaction between others on a public street did not, without more, constitute probable cause for his warrantless arrest. Somewhat similarly, the Appellate Division, First Department, has held in *People v Williams (supra)* that the defendant's position as 1 of 4 or 5 persons in a given bar who fit the description of a recent seller of narcotics at that location could not suffice to support his search without a warrant (cf. *People v Valo,* 92 AD2d 1004, app dsmd 60 NY2d 588).

Applying the rationale of these cases to the facts at bar, it is my belief that while the existence of a search warrant and knowledge that part of a narcotics transaction had recently been completed on the premises of the candy store undoubtedly provided the searching officers with probable cause to believe that a crime had been and was being committed on those premises *by someone,* there was, at the time of their entry, no reasonable basis for the further inference that the defendant, who was not the owner nor otherwise known to the officers, was engaged in that activity. Thus, he was merely 1 of 4 persons who were located in the general area behind the counter, and was not even the individual who was originally observed inside the room from which the contraband was ultimately recovered.[*]

---

[*] In short, the defendant's presence was fully consistent with the explanation given at trial, to wit, that he was there to discuss the purchase of a used car from the owner of the store, Marrero.

Given these thoroughly ambiguous circumstances vis-à-vis the nature of the crimes under investigation, we are left with only two additional bits of information which came to the detectives' attention prior to the formal arrest and search of the defendant: (1) the defendant's so-called "flight" into the back room when the officers first entered the premises, and (2) the eventual discovery of the contraband therein.

Of these two factors, clearly the second does not add materially to the quantum of incriminating data then at the officers' disposal for, on one level, the discovery merely confirmed the accuracy of the information underlying the search warrant. Moreover, and more important, there is nothing in the record which would tend to connect defendant to any of the contraband (which was not, after all, discovered in plain view), for assuming, *arguendo,* that the testimony adduced at the hearing had tended to establish that the officers conducting the search had been apprised of the fact that the unknown supplier of the narcotics was expected to be found on the premises (which it emphatically did *not*), there still would have been no reasonable cause to believe that all of the persons present were so involved, nor any way for the officers to determine which among the three individuals with whom they were unfamiliar (i.e., the individuals other than Marrero) that supplier might have been (see *People v Williams, supra*). Finally, it is important to note that while *three* guns were ultimately recovered, there were *four* individuals who actually fled into the back room, so that there was no numerical equality between the number of occupants and the number of guns.

As for the evidence of flight, it is well established that flight alone is an ambiguous circumstance which will not support a finding of probable cause (see *People v Howard,* 50 NY2d 583; *People v Chestnut,* 91 AD2d 981; *People v Eaddy,* 78 AD2d 761), and while it is equally true that flight can be an important factor in determining probable cause when there are other indicia of criminal activity present (see *People v Howard, supra,* p 592), it is my belief that where, as here, the outward indicia of criminal activity are wholly unrelated to the defendant and the so-called

"flight" results from the armed intervention of plainclothes policemen, under circumstances which are, perhaps, equally consistent with an attempted robbery, the "flight" retains its ambiguous character. Thus, in *People v Valo* (92 AD2d 1004, *supra*), it was flight plus the observation, *inter alia,* of suspicious conduct on the part of the defendant which combined to furnish probable cause for his pursuit and arrest, while in *People v Sbraccia* (92 AD2d 628), it was, *inter alia,* the defendant's arrival in the company of two known drug sellers in a vehicle in which they were known to have gone with an unknown third person to New York City in order to purchase narcotics, which, when viewed in conjunction with the defendant's flight, was found to constitute probable cause (see, also, *Sibron v New York,* 392 US 40; *People v Kreichman,* 37 NY2d 693; *People v Dread,* 49 AD2d 401, affd 41 NY2d 871). Indeed, while I fully agree with the substance of the majority's citation to *Sibron v New York* (*supra,* pp 66-67) for the proposition that flight plus furtive conduct upon the part of a defendant at the approach of law enforcement officials "are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the [arresting] officer relating the suspect to the evidence of crime * * * are proper factors to be considered in the decision to make an arrest" in my view, the foregoing formulation is inapplicable in this case where there is no indication of any furtive conduct on the part of the defendant beyond "flight", nor any direct nexus between the defendant and "evidence of [the] crime" for which he was ultimately arrested. Thus, the closing of the door behind them as they entered the back room has not been tied evidentially to the defendant, nor would the foregoing, standing alone, appear any more "furtive" than running around a corner. In short, it was, under the facts and circumstances of this case, part and parcel of the flight itself. Moreover, there is no indication of the defendant's possession or concealment of any of the contraband which was ultimately recovered from the back room.

In conclusion, while it may be argued that the discovery of contraband heightened to a moral certainty the officers' cause to believe that a crime was being committed by

*someone* on the premises, in my view, the sum total of the information revealed by the arresting officer at the suppression hearing was insufficient to render it "more probable than not" that *this* defendant was involved in the underlying crime (see *People v Carrasquillo, supra,* p 254). Moreover, in the absence of any independent data tending to establish criminal activity on the part of this defendant, I cannot regard the existence of flight on his part as a sufficiently incriminating circumstance, either singly or in combination with the other delineated factors, to have warranted his arrest. Since the arrest was illegal, the evidence obtained as a result of the ensuing incidental search must naturally be suppressed, the conviction reversed, and the matter remitted for a new trial.

NIEHOFF and BOYERS, JJ., concur with BROWN, J.; GIBBONS, J. P., dissents and votes to reverse the judgment appealed from, grant the motion to suppress, and order a new trial, in an opinion in which BRACKEN, J., concurs.

Judgment of the Supreme Court, Kings County, rendered July 10, 1981, affirmed.