THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN MINGO, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY SCHWARTZ, Appellant.

Fourth Department, May 23, 1986

## APPEARANCES OF COUNSEL

*Herbert L. Greenman* for John Mingo, appellant.

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Stanley J. Sliwa* and *Paul J. Cambria, Jr.,* of counsel), for Gregory Schwartz, appellant.

*Richard J. Arcara, District Attorney (Jo Faber* and *John J. De Franks* of counsel), for respondent.

## OPINION OF THE COURT

GREEN, J.

The issue is whether defendants were arrested based upon probable cause. The following relevant facts were developed at the suppression hearing held on January 2, 1985. Charles McCoy, an agent of the Federal Drug Enforcement Administration (DEA) received several phone calls from the DEA office in Rochester informing McCoy that a police officer in Virginia was told by an unidentified informant that defendant John Mingo would be arriving by plane in Buffalo at 1:05 P.M. on March 24, 1984 to purchase cocaine and that Mingo would be returning to Virginia the same day. Mingo did in fact arrive, but at 2:05 P.M., and met at the airport with defendant Gregory Schwartz and his companion John Cordaro. The three men went to the airport cocktail lounge and shortly thereafter, Nancy Burgstahler, an undercover DEA agent, sat at the bar near Mingo. She saw Mingo reach into his jacket pocket with his right hand and Schwartz reach into the left pocket of his pants. She heard paper crumpling but could not see what either defendant held in his hand. She also heard the three men discussing air fares between Buffalo, Newark and Virginia and heard Mingo say that he had to be back in Newark within the hour.

Mingo left the bar and walked directly to a gate and boarded a plane bound for Newark. McCoy and a police officer followed Mingo onto the plane. As Mingo was standing in the aisle waiting to be seated, McCoy identified himself as a DEA agent and told Mingo to accompany McCoy and the officer off the plane. As the men walked out of the jetway onto the concourse area of the airport, Mingo broke away and ran toward the terminal lobby where he was apprehended in the hallway near the bar where Schwartz and Cordaro were still seated. McCoy then entered the bar and arrested Cordaro while Burgstahler arrested Schwartz.

At the conclusion of the suppression hearing, the prosecutor reminded the court of his earlier offer to make the confidential informant available for an in camera examination "if the court felt it necessary". Defendants objected on the grounds that they neither requested a *Darden* hearing *(see, People v Darden,* 34 NY2d 177) nor raised any issue as to the existence of an informant. Nevertheless, on March 8, 1985, the hearing court, in chambers and outside the presence of defendants and their counsel, took testimony from the informant and two police officers, one from Virginia and the other from Rochester, who passed the informant's tip along to McCoy. The hearing court denied defendants' motions to suppress on the ground that each defendant was arrested based upon probable cause relying, in part, on the in camera examination of the informant and police officers. We disagree.

Defendant Mingo was arrested when DEA Agent McCoy took him off the plane *(People v Cantor,* 36 NY2d 106, 111; *People v Shivers,* 21 NY2d 118; *People v McKay,* 29 AD2d 834). Submission to lawful authority is not consent *(see, Bumper v North Carolina,* 391 US 543, 550; *Amos v United States,* 255 US 313; *People v Gonzalez,* 115 AD2d 73, 79-81). "Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle" *(People v Gonzalez,* 39 NY2d 122, 128). Hence, once Mingo was apprehended on the plane by McCoy and told to leave the plane, he was under arrest and in custody *(Dunaway v New York,* 442 US 200; *People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851).

At this time, McCoy did not have sufficient information for probable cause to believe that Mingo had committed a crime (CPL 140.10 [1] [b]). McCoy observed only that Mingo arrived at the Buffalo airport at 2:05 P.M., sat at the airport bar and talked to defendant Gregory Schwartz and John Cordaro, an

acquaintance. Undercover Agent Burgstahler, sitting at the bar, overheard Mingo remark that he had to return to Newark within an hour and may be traveling to Virginia and observed Mingo and Schwartz make hand motions, but was unable to see what, if anything, either defendant had in his hands. At best, the behavior of each defendant was equivocal and capable of innocent interpretation and insufficient to establish probable cause for an arrest (People v Bigelow, 66 NY2d 417, 424; People v Elwell, 50 NY2d 231; People v Stewart, 41 NY2d 65, 66; People v Brown, 24 NY2d 421; People v Corrado, 22 NY2d 308, 311).

The People failed to establish, by clear and convincing evidence, the reliability of the informants, or the basis of the informants' knowledge (Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410; People v Bigelow, supra, pp 422-424). Moreover, even if the informants are reliable there is no way to determine the basis of their knowledge. The failure of the People to produce the informants at the suppression hearing prevented the hearing court from determining how the informants acquired the information they passed on.

The suppression court's ex parte communication with the informant after the People had rested at the suppression hearing cannot be used to bolster the showing of probable cause. The purpose of a Darden hearing (People v Darden, 34 NY2d 177, supra) is to establish the existence of an informant, not the basis of his or her information. Here, defendants did not request a Darden hearing and never questioned the existence of the informants. Accordingly, the suppression court erred in conducting any in camera investigation based on the proof presented at the suppression hearing and should not have relied on proof submitted at the so-called Darden hearing in its probable cause determination. In any event, the testimony did nothing to establish the reliability of the arresting officer's knowledge because the informants never spoke to McCoy and McCoy had no way of knowing the basis of the informants' knowledge.

The People also failed to produce the sending police officer at the suppression hearing. Even if Officer McCoy believed he had probable cause to arrest Mingo on the plane, on a motion to suppress where a challenge to the information McCoy received was made, the presumption of probable cause that originally cloaked his actions disappeared (People v Lypka, 36 NY2d 210, 214). Since defendants challenged the basis for their arrest, the legality of Mingo's arrest cannot be justified

by reliance upon information received from the sending police officer without his testimony *(People v Havelka,* 45 NY2d 636; *People v Lypka, supra).*

Accordingly, the judgments should be reversed, defendants' motions to suppress should be granted and a new trial granted.

SCHNEPP, J. (dissenting). I dissent and would hold that Mingo was not arrested when he left the plane with McCoy and that the proof at the open suppression hearing established that a limited intrusion occurred at that time which was justified by the information possessed by the police. When Mingo was subsequently seized after he fled from McCoy, the reasonable suspicion of the police based on such information ripened into probable cause justifying his arrest and the arrest of Schwartz which immediately followed *(see, People v Ortiz,* 103 AD2d 303, *affd* 64 NY2d 997).

Analysis of the probable cause issues surrounding Mingo's arrest is complicated because the suppression court conducted, and relied on, the testimony from the in camera hearing. It is clear that the prosecutor encouraged the court to hold this hearing as a vehicle to bolster the evidence of probable cause and that the People both abused the process and violated defendants' constitutional rights by using the hearing to present testimony which they should have offered at the open suppression hearing.

A *Darden* hearing is intended primarily as a vehicle to preserve the anonymity of the informant in situations where the police are reluctant, out of fear of disclosing the informant's identity, to demonstrate that an informant possessed a basis of knowledge and was reliable. Then, the court may conduct such an inquiry "to protect against the contingency, of legitimate concern to a defendant, that the informer might have been wholly imaginary and the communication from him entirely fabricated" *(People v Darden,* 34 NY2d 177, 182). A *Darden* hearing is permitted as a limited exception to the constitutional right to confront and cross-examine witnesses and its use must be strictly limited. Before holding this hearing the People must come forward with all of their proof except that which would compromise the informant's anonymity.

The issue here is whether the proof at the open hearing established an· adequate foundation for the in camera procedure. The People contend that McCoy's testimony that he

knew that the information he received from the DEA office in Rochester came from an informant was sufficient to permit the court to examine the informant and the police officers who relayed the information. If the People intended to rely on the informant's tip as constituting probable cause for an arrest, they had an obligation to establish at the suppression hearing "that the informant has some basis of knowledge for the information he transmitted to the police and that the information is reliable" (People v Johnson, 66 NY2d 398, 402; see also, People v Bigelow, 105 AD2d 1110, affd 66 NY2d 417). "Just as a police officer may not arrest without probable cause, so he may not do so relying on hearsay information lacking a sufficient basis of knowledge to constitute probable cause" (People v Landy, 59 NY2d 369, 375). McCoy's testimony reflects that he rested on his fellow officer's assessment of the confidential informant's reliability. The People could have established a need to consider a Darden hearing and provided the suppression court with a proper basis to rely on the informant's tip as establishing probable cause by attempting to show at the open hearing that the officers who relayed the information to McCoy had reason to believe that the information was reliable (see, People v Petralia, 62 NY2d 47, 50-52, cert denied 105 S Ct 174; People v Havelka, 45 NY2d 636; People v Lypka, 36 NY2d 210). The People never presented this proof in open court and attempted to remedy this deficiency by presenting the testimony of the police officers at the Darden hearing itself. No apparent reason existed to preserve the officers' anonymity and their appearance at the Darden hearing had no purpose except to supply, after the fact, a basis to hold the hearing. Their testimony abused the authorized Darden procedure, and violated defendants' 6th Amendment rights. I agree with the majority that the suppression court erred in conducting any in camera investigation based on the proof presented at the open hearing and should not have relied on the proof submitted at the Darden hearing in its probable cause determination. However, in my view, this error does not require reversal.

There is no doubt that McCoy was unaware of the identity, reliability or basis of knowledge of the confidential informant prior to the arrest. Since the proof did not establish these elements, the information derived from the informant cannot be treated as of any greater value than information obtained from an anonymous tip, which, standing alone, is insufficient

to provide the police with probable cause to arrest a person without a warrant.

"[U]sing anonymous information as a basis for intrusive police action is highly dangerous" *(People v Taggart,* 20 NY2d 335, 343); however, where similar information coming from a known informant would constitute probable cause an anonymous tip may provide constitutionally adequate grounds for a limited intrusion *(see, People v Stewart,* 41 NY2d 65, 69). Here, the police on the scene had unverified information that Mingo was en route to Buffalo to purchase cocaine. They were informed as to how he was dressed, on what airline and flight he was expected to arrive and that he was scheduled to leave Buffalo that same afternoon. Mingo's presence in Buffalo and his travel plans were corroborated by independent police observations prior to the initiation of any contact with him. Mingo was seen meeting with Schwartz and Cordaro and observed ostensibly transacting some type of business with them. Based on the specific information which they possessed the police had grounds for a reasonable suspicion that Mingo had purchased cocaine at the airport, as the tip had indicated he would. When Mingo prepared to leave the airport by boarding an airplane the police possessed "specific and articulable facts which, along with * * * logical deductions" *(People v Cantor,* 36 NY2d 106, 113) authorized them to make inquiry of him and demand an explanation of his conduct (CPL 140.50 [1]). "Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" *(People v Cantor, supra,* pp 112-113). "Where a police officer entertains a reasonable suspicion that a particular person has committed * * * a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person" *(People v La Pene,* 40 NY2d 210, 223).

Whether Mingo was subjected to an unreasonable seizure in violation of his 4th Amendment rights depends on the character of the encounter on the airplane. McCoy testified that he entered the airplane behind Mingo and tapped him on the back to gain his attention. Two officers were present but only McCoy spoke to Mingo and he simply identified himself as a DEA agent and asked Mingo to accompany him off the airplane, which McCoy knew was preparing to leave for Newark. The officers were dressed in plain clothes, did not draw or in any way display their weapons and made no move to search Mingo. In response to this minimal intrusion it is uncontro-

verted that Mingo agreed to accompany McCoy off the plane. Mingo's conduct connotes his acquiescence to a request rather than his submission to lawful authority. In my view, this was not a full-blown arrest requiring probable cause but constituted a limited "seizure" at most which was fully justified under 4th Amendment principles *(see, People v Hicks,* 116 AD2d 150). A reasonable person innocent of any crime would not have concluded that he had been arrested simply because a police officer had asked him to step off an airplane *(see, United States v Mendenhall,* 446 US 544, 554; *People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851). Mingo was subjected to no more than a limited investigative detention under CPL 140.50 which was justified by articulable, objective facts which gave rise to a reasonable suspicion that a crime had been committed.

The remaining issue to be decided is whether that reasonable suspicion was elevated to probable cause by defendant's flight from the agents as they reentered the terminal. It is well settled that "where there are indications of criminal activity, flight from police [is] 'an important factor in determining probable cause' " *(People v Chapman,* 103 AD2d 494, 497; *see, People v Howard,* 50 NY2d 583, 592, *cert denied* 449 US 1023; *People v Medina,* 107 AD2d 302, 307; *People v Ortiz,* 103 AD2d 303, *supra).*

Mingo's flight from McCoy, in and of itself, would not have provided the officers with probable cause to make an arrest. However, when defendant's flight is coupled with (a) the tip that Mingo was traveling to Buffalo to purchase drugs and would be leaving Buffalo the same day and (b) the observations of the police (1) that Mingo arrived in Buffalo as predicted, (2) that he met with two men at an airport bar for only 10 minutes, (3) that there was an exchange during the meeting, and (4) that he left the bar and immediately boarded a return flight to Newark, it is clear that under the totality of the circumstances probable cause existed for his arrest.

The People met their burden to establish the existence of probable cause for Mingo's and consequently Schwartz' arrest at the open suppression hearing without dependence on the evidence improperly submitted at the *Darden* hearing. Inasmuch as the arrests were valid, the searches incident to arrest were also valid and the motions for suppression were properly denied.

Accordingly, the judgments of conviction should be affirmed.

DILLON, P. J., DOERR and DENMAN, JJ., concur with GREEN, J.; SCHNEPP, J., dissents and votes to affirm the judgments in an opinion.

Judgments reversed, on the law, motions to suppress granted and new trial granted.