■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE HARRIS, Appellant.—Judgment, Supreme Court, New York County (Eugene Nardelli, J.; Harold Rothwax, J., on suppression motion), rendered August 20, 1987, which convicted defendant, upon his plea of guilty to attempted murder in the second degree (under indictment No. 5254/87) and which sentenced him to a term of 4½ to 9 years to run concurrently with a 3½ to 7 year prison term, imposed under indictment No. 1871/79, unanimously affirmed.

In our prior decision in this appeal (160 AD2d 515), we affirmed defendant's conviction under indictment No. 1871/79 and remanded for a *Mapp* hearing in the instant case (indictment No. 5254/87). That hearing has been held and the knife and other physical evidence seized from defendant upon his arrest have been ruled admissible (Robert Haft, J.). Defendant now additionally takes issue with that ruling.

At the hearing, Police Officer Samuel Ramirez testified that, at 6:30 A.M. on November 27, 1986, he responded to a radio call for help on Tenth Avenue between 43rd and 44th Streets. There, Ramirez and the other responding officers discovered a man who had been wounded in a stabbing. An elderly His-

panic man approached Officer Ramirez and said he had seen the attacker, whom he described as a black male wearing dark pants and a white shirt which was covered with blood, and who had run east on 44th Street. Ramirez believed that the man had said that the shirt worn by the attacker was a T-shirt, but he was not certain.

Ramirez immediately drove his car east on 44th Street and, at Ninth Avenue, not having seen anyone who matched the description, left the car and started to try the doors of some of the buildings. At that point, he noticed defendant, a black male dressed in dungarees and a white T-shirt, lying motionless on the curb. Defendant was lying on his side, with his back to the officer, and was directly pressed up against a parked car. The officer did not observe any blood.

The officer immediately drew his gun and ordered defendant to roll over and not to move. When defendant rolled over, for the first time in a position to observe the officer with gun drawn, he simultaneously exposed the front of his shirt, which was covered with blood. At that point, the officer frisked defendant and retrieved a blood stained knife from his pocket, whereupon he was placed under arrest. When Officer Ramirez returned to the scene of the crime, the man who claimed to have witnessed the attack and who had provided the description was gone.

The hearing court found that, at the point Officer Ramirez ordered defendant to roll over, he had sufficient information to give him the common law right to inquire, i.e. "a founded suspicion that criminal activity is afoot and permits * * * a policeman * * * to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure". *(People v De Bour,* 40 NY2d 210, 223.) The court found that, since the officer's order did not amount to a seizure, and since, once the defendant rolled over, revealing the blood on his shirt, the officer had reasonable suspicion to believe that defendant had committed the crime and was armed, he was at that point entitled to conduct the frisk which resulted in discovery of the knife.

We find that Officer Ramirez's conduct was "reasonably related in scope to the circumstances which rendered its initiation permissible" *(People v De Bour,* 40 NY2d 210, 222, *supra)* and that the evidence recovered from defendant should not be suppressed. However, we find that under these circumstances when Officer Ramirez approached the defendant he had more than merely the common law right to inquire. At

that point the officer possessed sufficient facts to provide a reasonable suspicion that defendant had committed the crime, and the officer was, therefore, entitled to forcibly stop and detain defendant *(People v De Bour,* 40 NY2d, *supra,* at 223; CPL 140.50 [1]).

The requisite reasonable suspicion here was predicated upon two factors, the description that the officer received from a witness at the scene and the officer's own personal observations of the defendant's behavior.

With respect to the first factor, the officer had received a description from a citizen informant in a face to face encounter. While this does not rise to the same level of reliability as a tip supplied by an identified informant *(cf., People v Thornton,* 139 AD2d 787), it is clearly more reliable than an anonymous tip received over the telephone, since the officer has an opportunity to assess the reliability of the informant " 'on the basis of appearance and demeanor, factors crucial to any such assessment' " *(People v Castro,* 115 AD2d 433, 435, quoting *People v Bruce,* 78 AD2d 169, 173; *see also, People v De Bour,* 40 NY2d, *supra,* at 224-225). This was particularly so here in light of the fact that there was no evidence that the informant refused to reveal or attempted to conceal his identity. Rather, the officer's failure to attempt to ascertain the identity of the informant was due to the understandable haste with which he left the scene in an attempt to apprehend the very recently departed attacker.

Additionally, there was no question as to whether a crime had been committed in this case, but only a question of whether the officer could reasonably suspect defendant of being the assailant. A report by an anonymous bystander which is substantiated by the unfolding facts, is clearly more reliable than one in which the officer has only an informant's word that a crime has even been committed. *(See, People v Benjamin,* 51 NY2d 267; *cf., People v De Bour,* 40 NY2d, *supra,* at 225-226.) Here, while the description given by the witness was not a detailed one, Officer Ramirez's testimony that the streets were not crowded at that early morning hour, that defendant was found on the very street down which the informant had stated the assailant had fled, and that defendant was the only person observed who matched the description all added support to the suspicion that defendant was the man he sought *(see, People v Grey,* 134 AD2d 613; *People v Saylor,* 113 AD2d 904).

Moreover, the police officer in this case had much more to guide him than merely the word of a third party. The infor-

mation received from the informant was substantially enhanced by the officer's own observations including the fact that defendant was discovered in a very compromising position, quite apparently attempting to conceal himself from being seen from the street, where the officers had just driven by *(see, People v Ortiz,* 103 AD2d 303, *affd* 64 NY2d 997; *People v Whitney,* 90 AD2d 640). While, as defendant points out, the sight of persons sleeping on the city streets is, sadly, not an uncommon one, it is nevertheless quite unusual to see someone lying on the curb pressed up against a parked car, crouched in a way that appears to be particularly designed to hide the upper front of the person's body. Since the officer was aware, from the informant's description, that the assailant's shirt had been stained with blood during the attack, this apparently deliberate attempt to hide the front of his shirt clearly served to further implicate defendant.

At this point, we conclude that Officer Ramirez possessed sufficient facts to provide a reasonable suspicion that defendant was the person who had committed the crime. When defendant rolled over and Officer Ramirez observed the blood stains on the front of his shirt and then recovered a blood stained knife from defendant's person, there was probable cause to arrest. Concur—Kupferman, J. P., Ross, Milonas, Rosenberger and Ellerin, JJ.