■ In the Matter of FRANKIE M., a Person Alleged to be a Juvenile Delinquent, Respondent. [606 NYS2d 232] —Order, Family Court, Bronx County (Harvey M. Sklaver, J.), entered December 3, 1992, which dismissed the petition, after the court, upon a combined *Mapp/Huntley* hearing, suppressed a handgun and the juvenile respondent's statement, unanimously reversed, on the law and facts, the petition reinstated and the matter remanded to the Family Court for further proceedings.

The relevant facts are brief. Police Officer Brian Dorrian testified that he was on anti-crime patrol with two partners when a group of 6 or 7 youths flagged them down and pointed out respondent a half block away. The youths described respondent in detail and stated that he had a gun. The officers approached respondent, who walked alone, although a group of other youths was a few car lengths away from respondent. Dorrian had no doubt that respondent, the only person fitting the description, was the person pointed out. The officers displayed their shields. Respondent was secured from both sides as he was patted down. No questions were asked, and the officers did not testify that they were in fear. The frisking officer nodded toward respondent's waist, which Dorrian construed to indicate that he had felt a gun. Dorrian lifted respondent's shirt, and extracted a gun from the waistband. Ballistics evidence indicated that the gun was a loaded and

operable .357 magnum. Neither Dorrian nor the frisking officer had unholstered their own guns.

The officers conducted no discussion with respondent at that time nor on the way to the precinct. At the precinct, within 8 minutes of the arrest, while respondent was providing pedigree information, he spontaneously blurted out that the gun was not his, that the friend who owned the gun had asked him to take it to school, that the friend had asked respondent to shoot another youth, but, although refusing to do so, respondent still felt the need to lift his shirt to indicate that he still had the gun.

The court credited Dorrian's testimony, found a basis to stop and question, but then concluded that the extent of police conduct was illegal. The court noted the lack of testimony that the officers had feared for their safety, or the presence of a surrounding crowd whose safety could have been jeopardized. It found that there was no evidence of a bulge or that respondent's hand was reaching for something. The court then suppressed the gun, as well as the statement which was the product of the arrest.

We find that these facts were sufficient to establish reasonable suspicion under the statute (CPL 140.50 [1]) and the *De Bour* rubric *(People v De Bour,* 40 NY2d 210, 223). The circumstances of this case warrant a conclusion that in approaching this young respondent, the officers had an objective reason to believe that they were in danger, thus justifying a pat-down (CPL 140.50 [3]). Notably, the court even suggested that the officers, with justification, could have approached with guns drawn.

As the finder of facts, the court never discredited the validity of the information provided by the other bystanders. While the law guardian challenged the legality of the stop and search and characterized the informants as anonymous, this is not accurate, because the young informants provided the information in the context of a face-to-face encounter with the police. This distinguishes the nature of these informants (who did remain unidentified) from anonymous telephone callers in other cases.

In *People v Harris* (175 AD2d 713, 714-715, *lv denied* 79 NY2d 827), we noted that although not as presumptively valid as information provided by an identified informant, information provided by an unidentified informant who nevertheless provides the information in a face-to-face encounter, gives the police an opportunity to evaluate appearance and demeanor.

It justifies more than a bare right of inquiry. As in the present case, the failure by the police to identify the informants arose only from the understandable haste and urgency which motivated the police, not from any reluctance of the informants to be identified. In *Harris,* the combination of the general description, when defendant could not immediately be found, and blood on defendant's shirt, justified the stop. In the present case, respondent was actually pointed out from a short distance, and a detailed description, as well as explicit information that he had the gun, was provided. The officers possessed sufficient facts to justify a reasonable suspicion that respondent was committing a crime and, therefore, were entitled to stop and search respondent *(People v De Bour, supra;* CPL 140.50 [1], [3]).

We have also addressed an analogous situation in *People v Castro* (115 AD2d 433, *affd* 68 NY2d 850), where the police had arrested the informant and others. While in the patrol car, the informant told the officers that defendant, pointed out across the street, had a gun. Police went to investigate, leaving the informant in the patrol car, who then fled. Defendant was approached, patted-down, and a loaded gun was recovered. The suppression court credited police testimony, and, notwithstanding the failure of police to ascertain the informant's identity, found the information to be sufficiently credible so as to provide a valid predicate for the stop and that the pat-down was justified by the nature of the information. This Court distinguished this situation from an anonymous tip, and found the conduct of the police to have been reasonable. "Here the officer had a reasonable suspicion that the defendant * * * had a gun, and appropriately conducted a pat-down. The object of the information, the defendant, was clearly within the view of the officer and the informant, and it was obvious that the description was accurate." *(Supra,* at 436.)

The Family Court also erred by requiring evidence of a bulge or another act by respondent justifying a search. The credible information received by the police was sufficient to provide them with a reasonable suspicion justifying their stop and search. Under the circumstances of this case, the police acted in the least intrusive manner which was practicable, yet consistent with their own safety *(see, People v Cartagena,* 189 AD2d 67, 70-71, *lv denied* 81 NY2d 1012).

Since the *Huntley* suppression ruling only followed the *Mapp* ruling, and the court found no independent basis for suppression of the statement arising out of involuntariness,

this branch of the order suppressing respondent's statements is also reversed. Concur—Sullivan, J. P., Asch, Rubin and Nardelli, JJ.