*871 OPINION OF THE COURT
Michael A. Gross, J.
Defendant is charged with criminal possession of a weapon in the fourth degree and other related charges. Defendant moves to suppress physical evidence consisting of a gravity knife and counterfeit currency, seized from his person, based on his claim that he was subjected to an unlawful search and seizure. Defendant also moves to suppress a statement made by defendant as the fruit of an unlawful arrest.
On July 19, 2007, a combined Mapp ¡Huntley¡Dunaway hearing was held before this court. Police Officer Castro testified for the People as their sole witness. Defendant did not present any witnesses. This court finds that the People’s witness testified candidly, credibly and to the best of his recollection. Accordingly, this court adopts his testimony in its entirety. For the reasons set forth, defendant’s motion to suppress is granted.
Findings of Fact
On February 18, 2007, at approximately 1:14 a.m., Officer Castro, who had just over two months’ experience as a police officer, was on routine patrol in a marked police car together with Officer Fuchetta and Lieutenant Fitzpatrick. They were driving along East Tremont Avenue in the Bronx when the officers observed defendant drinking from a bottle wrapped in a brown paper bag. Officer Castro approached defendant and asked him if the bottle contained alcohol. Defendant poured out some of the liquid from the bottle to demonstrate that it contained orange juice. Officer Castro testified that he apologized for the inconvenience and was about to return to his vehicle when he observed an object sticking out of defendant’s right front pants pocket. Defendant did not make any suspicious gestures or reach toward his pocket during the confrontation. Officer Castro testified that he could not say with 100% certainty that what was in defendant’s pocket was a knife; however, he assumed that it was a knife.
Officer Castro had approximately two months’ experience as a police officer, and testified that the only thing he has seen with a clip attached to it was a knife or “some kind of cutting tool like a sheet rock cutter, for example.” Officer Castro had approximately one week of training at the police academy identifying various weapons including gravity knives, daggers, switchblades, and various firearms. Officer Castro testified that it was the clip and the outline of the knife that caused him to *872 believe that defendant had a knife in his pocket. However, when Officer Castro retrieved the knife from defendant’s pocket, the knife was in a black nylon case.
Officer Castro testified that he did not fear for his safety when he observed the clip sticking out of defendant’s pocket. Officer Castro, however, did notify his fellow officers that he believed defendant was in possession of a knife. Officer Castro then reached into defendant’s pocket and removed the knife. Defendant was then handcuffed and placed under arrest. Defendant was cooperative and did not attempt to flee during the encounter.
After he was arrested, defendant was taken to the precinct for processing. Upon a search of defendant’s wallet, Officer Castro observed that some of the money in defendant’s wallet (approximately 16 20-dollar bills) was counterfeit. Defendant asked Officer Castro if he was going to be released with just a summons. Officer Castro testified that he replied “the money.” Defendant then responded “I found it in an alley.”
Conclusions of Law
Where a defendant challenges the admissibility of physical evidence, once the People come forward with evidence demonstrating the reasonableness of police conduct in all respects, he bears the ultimate burden of proving that the evidence was seized in violation of his Fourth Amendment rights (see People v Berrios, 28 NY2d 361 [1971]). In this case, the People failed to meet that initial burden, and defendant met his burden of establishing that the search of his person was improper. Accordingly, for the reasons set forth below, defendant’s motion to suppress the gravity knife and counterfeit currency seized from his person is granted.
In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals set forth four levels of police intrusion during encounters with citizens on the street, and the level of knowledge required to justify each level. The first level permits an officer to approach a citizen and request information, provided the police have some objective, credible reason for the intrusion not necessarily indicative of criminality (De Bour, 40 NY2d at 223; see also People v Hollman, 79 NY2d 181 [1992]). The second level is the common-law right to inquire, which permits a police officer with a “founded suspicion that criminal activity is afoot” to “interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure” (De Bour, 40 *873 NY2d at 223). Under level three, the police have authority forcibly to stop and detain a person when they have reasonable suspicion to believe that the person is committing, has committed or is about to commit a crime (id.; see also CPL 140.50 [1]). Level three also authorizes the officer to frisk that person for weapons where he reasonably suspects that there is a danger of physical injury (De Bour, 40 NY2d at 223; see also Terry v Ohio, 392 US 1 [1968]; CPL 140.50 [3]). Finally, under level four, the police may arrest a person where they have probable cause to believe the person has committed a crime in the officer’s presence (De Bour, 40 NY2d at 223).
In this case, the police observed defendant drinking from a bottle wrapped in a brown paper bag, and approached him because they believed the bottle contained alcohol. Officer Castro approached defendant and asked him if the bottle contained alcohol. Defendant then poured out some of the contents to demonstrate that it was orange juice. Since the police had founded suspicion that criminal activity was afoot,[1] they had a right to make an inquiry in order to gain explanatory information from defendant. Accordingly, the police properly approached defendant to determine if in fact the open bottle defendant was drinking from contained alcohol.
However, the subsequent seizure of the knife from defendant’s person was unlawful. After determining the bottle contained orange juice and not alcohol, Officer Castro was about to return to his vehicle when he observed a clip sticking out of defendant’s right front pants pocket. Officer Castro testified that although he could not say with 100% certainty that the object in defendant’s pocket was a knife, he assumed it was a knife because he observed a clip. Furthermore, Officer Castro testified that he did not fear for his safety[2] when he observed the clip sticking out of defendant’s pocket. When Officer Castro saw the object, he notified his fellow officers that he believed defendant was in possession of a knife. Officer Castro then reached *874 into defendant’s pocket and removed the knife. Officer Castro did not question defendant as to what was in his pocket, or inquire if defendant was in possession of any weapon. The officer’s observation of the clip of an object that might be a gravity knife did not provide him with probable cause to seize the knife and arrest defendant under level four of De Bour.
Under Penal Law § 265.01 (1), a person is guilty of criminal possession of a weapon in the fourth degree when he possesses “any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or ‘Kung Fu star.’ ” It does not criminalize the possession of all knives, only those expressly mentioned. A gravity knife is defined as “any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device” (see Penal Law § 265.00 [5]).
Officer Castro’s mere observation of a clip sticking out of defendant’s pants pocket does not constitute probable cause to believe that defendant actually possessed an illegal knife. The officer never testified that he actually knew it was a gravity knife prior to seizing it from defendant’s person. In fact, the only way to determine that defendant’s knife was, in fact, a gravity knife was for the officer to test it with his hand, which he did after he seized it. At the time he seized it, he did not have probable cause to believe that defendant possessed a gravity knife. He only had reason to believe that defendant possessed a knife which could have been one of the many knives not subject to criminal sanctions under the Penal Law. Indeed, since only a portion of the clip was visible to the officer, and the remainder was concealed in defendant’s pocket, it could have reasonably been any number of innocuous items which people normally clip to their pants pockets aside from a knife. Thus, given the paucity of his observations, Officer Castro did not have probable cause to seize the knife and arrest defendant (see United States v Irizarry, 509 F Supp 2d 198 [ED NY 2007] [no probable cause to arrest where officer’s belief that defendant possessed gravity knife was not reasonable]).
At most, Officer Castro had a founded suspicion of criminal activity, which would have justified a common-law right of inquiry, permitting the officer to “interfere with [defendant] to *875 the extent necessary to gain explanatory information, but short of a forcible seizure” under level two of De Bour (Be Bour, 40 NY2d at 223; Matter of Camille H., 215 AD2d 143 [1st Dept 1995]; People v Harris, 175 AD2d 713 [1st Dept 1991]). Thus, the officer should have conducted an inquiry to determine whether his suspicions that defendant possessed an illegal knife were accurate.
Moreover, the evidence also failed to establish that Officer Castro properly seized the knife incident to a frisk for weapons. Level three of Be Bour authorizes a police officer to frisk a suspect for deadly weapons where he reasonably suspects that he is in danger of physical injury (Be Bour, 40 NY2d at 223; see also CPL 140.50 [3]). Here, the record is devoid of any evidence that Officer Castro had reasonably feared for his safety at any time, justifying a frisk for the knife. On the contrary, Officer Castro clearly testified that he did not fear for his safety when he observed the clip sticking out of defendant’s pocket. There was no evidence in this record that the officer had any reason to believe that defendant was armed and dangerous. Defendant never made any furtive movements or threatening gestures during the confrontation. He never tried to reach for the knife or conceal it. On the contrary, defendant never exhibited any suspicious behavior and was completely cooperative with Officer Castro during the encounter. Furthermore, since he had not committed a violent offense and was merely being questioned regarding an open bottle possibly containing alcohol, Officer Castro had no reason to believe that defendant would subsequently become violent. Accordingly, Officer Castro would not have been justified in seizing the knife pursuant to a stop and frisk under level three of Be Bour (see Irizarry, 509 F Supp 2d at 209 [object clipped to defendant’s pocket which appeared to be gravity knife did not rise to reasonable suspicion of criminal activity; portion of item visible could have “represented many innocuous objects”]).
Therefore, defendant’s motion to suppress the gravity knife from his person is granted since it was recovered pursuant to an unlawful search and seizure. Defendant’s motion to suppress the subsequent counterfeit currency recovered and statement made by defendant is also granted since they were both the product of an illegal seizure (see Wong Sun v United States, 371 US 471 [1963]).

. See Administrative Code of City of NY § 10-125.

. Even if the record had not contained Officer Castro’s explicit acknowledgment that he had no fear for his safety when he seized defendant’s knife, there would have been no basis for the court to infer that there was an objective basis for concerns for safety where, as here, Officer Castro was part of a three-person unit on routine patrol and the incident under investigation was the nonviolent and nonthreatening offense of public consumption of alcohol (compare People v Moore, 32 NY2d 67 [1973] [holding that officer not required to articulate fear for safety at suppression hearing where record demonstrated good cause for such fear]).